## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RONTARUS WASHINGTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 2:23-cv-02063-JWB-RES** |
| | ) |
| **DOUGLAS COUNTY, KANSAS, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM IN SUPPORT OF DOUGLAS COUNTY DEFENDANTS'
## MOTION FOR JUDGMENT OF PLEADINGS

### I.     INTRODUCTION

In his First Amended Complaint [Doc. 3] Washington asserts, sparsely, that on January 12, 2015, he was charged with the murder and aggravated burglary of Justina Mosso. He claims that bond was initially set at $750,000.00 which he could not raise. The case did not proceed to trial until September 2019 and after a four-week trial, a mistrial was declared because the jury could not reach a verdict. Washington claims that he was held in the Douglas County Jail from January 2015 to July 1, 2020 when he was released on a reduced bond. He claims that the case was ultimately dismissed without prejudice on December 27, 2021.

Here, Washington asserts both federal and state claims against Douglas County, Kansas, former Sheriff Kenneth McGovern, former Sheriff Randy Roberts, and Sheriff Jay Armbrister [collectively "Douglas County Defendants"]. With regard to the state tort claims, the Douglas County Defendants are entitled to dismissal with prejudice because:

1) Washington has failed to plead and comply with the provisions of K.S.A. § 12-105b which is a condition precedent to suit. As a result, this Court lacks subject matter jurisdiction;

2) Washington fails to state a plausible claim for malicious prosecution;

3) In the alternative, if the Court determines that the criminal action was concluded in his favor, Washington's malicious prosecution action is barred by the one year statute of limitations found at K.S.A. § 60-514;

The Court should dismiss Washington's federal claims with prejudice on the following grounds.

1) Washington fails to allege facts sufficient to state a plausible claim under the procedural due process clause of the Fourteenth Amendment;

2) Washington fails to state a constitutional claim grounded on malicious prosecution because the criminal proceedings did not result in a favorable termination;

3) In the alternative, if the Court determines that the criminal action was concluded in his favor, Washington's malicious prosecution action is barred by the statute of limitations found at K.S.A. § 60-514;

4) Washington's procedural due process claims are barred by an available state tort claim;

5) The Individual Defendants enjoy qualified immunity.

## II.     STANDARDS TO BE APPLIED

### A.     Motion for Judgment on the Pleadings

The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Myers v. Koopman,* 738 F. 3d 1190, 1193 (10th Cir. 2013). When ruling on a defendant's motion to dismiss, the Court assumes as true all well-pled factual allegations and determines whether the allegations plausibly give rise to a claim of relief. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). A

complaint must contain enough factual matters to state a plausible claim not merely a conceivable claim. *Id.*; *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 555 (2007). When determining the plausibility of a complaint, the court relies on its judicial experience and common sense. *Id.* To obtain judgment on the pleadings, the moving party must demonstrate that the pleadings reveal no material issues of fact to be resolved. *Cessna Fin. Corp., v. JetSuite, Inc.,* 437 F. Supp. 3d 914, 919 (D. Kan. 2020). All reasonable inferences from the pleadings are construed in the non-moving party's favor. *Id.*

However, a court is not obligated to accept as true all allegations that state only legal conclusions. *Hall v. Bellmon,* 935 F. 2d 1106, 1110 (10th Cir. 1991). Plaintiffs are obliged to frame the complaint with enough factual substance to support their entitlement to relief. Threadbare recitals of a cause of action, supported by mere conclusory statements fall short of the standard. *Iqbal,* 556 U.S. at 678. A complaint does not have to provide detailed factual allegations, but the facts provided should rise above speculation. *Bell Atlantic Corp.* 550 U.S. at 555. If the allegations "are so general that they encompass a wide swathe of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to probable.'" *Robins v. Oklahoma ex. rel. Dep't. of Human Servs.,* 519 F. 3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570).

## III.   DEFENDANTS' STATEMENT OF FACTS

This statement of facts is based on the allegations in the First Amended Complaint as supplemented by an affidavit from the Clerk of the Board of County Commissioners of the County of Douglas because it addresses the Court's subject matter jurisdiction over Washington's state tort claims. *Holt v. U.S.,* 46 F. 3d 1000, 1003 (10th Cir. 1995).

**A.      Facts Pertinent to the Motion from the First Amended Complaint.**

1.      Former District Attorney Charles E. Branson was at all times relevant District Attorney of Douglas County, Kansas. [Doc. 3, ¶ 2].

2.      Former Sheriff Kenneth McGovern was the Sheriff of Douglas County, Kansas during the majority of Washington's criminal proceedings. [Doc. 3, ¶ 3].

3.      Former Sheriff Randy Roberts was the Sheriff of Douglas County, Kansas during at least part of Washington's criminal proceedings. [Doc. 3, ¶ 4].

4.      Sheriff Armbrister was the Sheriff of Douglas County, Kansas during at least part of Washington's criminal proceedings. [Doc. 3, ¶ 5].

5.      On or about January 12, 2015, Washington was charged with murder and aggravated burglary of Justina Mosso of Lawrence, Kansas and his bond was initially set at $750,000.00 which he could not raise. [Doc. 3, ¶ 10].

6.      Washington suffers from an intellectual disability that makes it difficult for him to learn and comprehend. While he was in custody, at least two orders were entered for competency examinations due to concerns regarding his ability to stand trial. [Doc. 3, ¶ 11].

7.      Washington's case did not proceed to trial until September of 2019. At that time, a four-week trial resulted in a mistrial because the jury could not reach a verdict. [Doc. 3, ¶ 12].

8.      Washington was held in the Douglas County Jail from January 2015 through July 1, 2020 when he was released on a reduced bond of $500,000.00 after a crowdfunding effort. In total, Washington served approximately 5 years and 5 months in the Douglas County Jail without a conviction. [Doc. 3, ¶ 13].

9.      At one point or another during the pendency of the case, Washington was appointed or retained approximately seven different attorneys. In April of 2021, he received representation from the Midwest Innocence Project. [Doc. 3, ¶ 14].

10. However, the dismissal of his case was not announced until a year and a half later on December 21, 2021, and the case was ultimately dismissed without prejudice on **December 27, 2021** [Doc. 3, ¶ 15].

11. At multiple points along the criminal case, Washington was assigned multiple attorneys which caused numerous delays and continuances. [Doc. 3, ¶ 17].

12. Because of his disability, Washington was not in a position to appreciate how the numerous motions to continue his criminal case would affect the length of his pretrial confinement. [Doc. 3, ¶ 18].

**B.     Notice of Claim.**

13. Counsel for Washington served Jamie Shew, the duly elected County Clerk of Douglas County, Kansas, with a Notice of Claim dated July 22, 2022, which was received by Shew on **July 27, 2022**. [Shew Affidavit,  ¶ 1-4, attached].

14. One of Shew's jobs is to receive and maintain for the Board of County Commissioners notices pursuant to K.S.A. § 12-105b . [Shew Affidavit, ¶ 2].

15. The July 22, 2022 letter is the only document received by Shew or the Board alleging a Notice of Claim pursuant to K.S.A. § 12-105b. [Shew Affidavit, ¶ 3].

## IV.     <u>ARUGMENTS AND AUTHORITIES</u>

**A.     State Tort Claims.**

In his First Amended Complaint, Washington alleges at Count I, a claim under the Kansas Tort Claim Act ["KTCA"] that he was "subjected to lawful but wrongful legal process which resulted in his imprisonment for five and a half years." [Doc. 3, ¶ 20]. He also asserts that "Defendants had customs or policies which led to Rontarus' constitutional rights being violated by Defendants." [Doc. 3, ¶ 21].  These claims are subject to dismissal for the reasons below.

**1. Washington has failed to plead and comply with the provision of K.S.A. § 12-105b.**

K.S.A. § 12-105b(d) requires anyone bringing a claim against a municipality under the Kansas Tort Claims Act, K.S.A. § 75-6101 esq., to provide that municipality with prior written notice setting out the specific facts and circumstances giving rise to the claim. Notice is a prerequisite to filing an action against a municipality. Failure to substantially comply with the statute precludes a plaintiff from obtaining relief in district court. *Sleeth v. Sedan City Hosp.,* 298 Kan. 583, 863 (2014); *Continental Western Ins. Co. v. Shultz,* 297 Kan. 769, 774 (2013). "Substantial compliance" means that a claimant must attempt to state each element required of the notice. *Tucking v. Bd. of Com'rs of Jefferson County,* 14 Kan. App. 2d 442, 448 (1990).

In 2017, K.S.A. § 12-105b(d) was amended to require a person to comply with the notice of claim requirement when suing under the KTCA against a municipality, a municipal employee, or both. *Nash v. Blatchford,* 56 Kan. App. 2d 592, 613 (2019). Because K.S.A. § 12-105b(d) creates a condition precedent, this creates a special burden under Rule 9(c) and K.S.A. § 60-209(c) which provides "in pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." *Tucking v. Bd. of Com'rs of Jefferson County,* 14 Kan. App. 2d 442, 445 (1990).

Here, the Notice of Claim asserts claims against "Douglas County" and "individuals identified in the factual basis of the claim." As to Douglas County, the Notice is deficient because K.S.A. § 19-105 directs "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'the board of county commissioners of the county of _____'..." (emphasis added). Thus, this statute makes clear that Washington's Notice must name the Board of County Commissioners of the County of Douglas in order to properly

comply with the statute. Washington does not and, therefore, this Court lacks subject matter jurisdiction over the Board.

Similarly, nowhere in the Notice does it identify any of the three Individual Defendants. In fact, despite indicating claims against "…individuals identified in the factual basis of the claim" none of the individuals' names appear at all.  Because it does not name the individual Defendants, the Notice does not substantially comply with the statute and is fatal to Washington's claims against them. Washington could have readily identified the names of the sheriffs during his years of incarceration particularly since the Notice of Claim was filed by an attorney. As elected officials, their identity was well known and, in fact, readily ascertainable on the Douglas County Sheriff's website alone. In sum, the state tort claims should be dismissed on this ground alone.

### 2. Washington fails to state a plausible claim for malicious prosecution.

In Count I of the First Amended Complaint, Washington asserts both a state tort claim and a constitutional claim. With regard to the latter, he simply asserts that "Defendants had customs or policies which led to Rontarus' constitutional rights being violated..."

Washington's malicious prosecution claim fails to allege facts sufficient to state a claim. *Saunders as next friend of R.S. v. USD 353 Wellington,* 2021 WL 1210019 at n. 1 (D.Kan. March 31, 2021). Kansas follows a notice pleading system. *Pioneer Ridge Nursing Facility Operations, LLC. v. Ermey,* 41 Kan. App. 2d 414, 419 (2009). Plaintiffs do not have to establish all possible legal theories in their initial petition so long as it provides enough facts to establish that the plaintiff is entitled to relief. A petition that can support a cause of action based on any theory is sufficient to survive a motion to dismiss. *Id.* at 419 (citing *Noel v. Pizza Hut, Inc.,* 15 Kan. App. 2d 225, 231, *rev. denied* 248 Kan. 996 (1991)).

Here, other than stating that the Board had "customs or policies" and the Individual Defendants were sheriffs at some time during his incarceration, Washington provides no facts establishing that he is entitled to relief under any theory.  The First Amended Complaint fails to state a claim in Count I on this basis alone.

Separately, discerning the exact nature of this tort claim suggests that Washington is asserting a malicious prosecution claim. In *Wallace v. Kato,* 549 U.S. 384 (2007), the court noted the tort of false imprisonment consists of detention without legal process, which necessarily ends when the victim becomes held pursuant to legal process. Any unlawful detention thereafter "forms part of the damages for the 'entirely distinct' tort of malicious prosecution," which remedies detention for the wrongful *institution* of legal process rather than a wrongful detention *without* legal process. *Id.* at 389-390.

The elements necessary to maintain an action for malicious prosecution include:

a)  That the defendant initiated, continued or procured [criminal] procedures against the plaintiff;

b)  That the defendant in so doing acted without probable cause;

c)  That the defendant acted with malice, that is that he acted primarily for a purpose other than that of securing the proper adjudication of the claim upon the proceedings are based.

d)  That the proceedings terminated in favor of the plaintiff;

e)  That the plaintiff sustained damages.

See Restatement (Second) of Tort § 674 (1976); *Thompson v. General Finance Co. Inc.,* 205 Kan. 76 (1970). *Nelson v. Miller,* 227 Kan. 271 276 (1980).

Generally, malicious prosecution claims are disfavored "because they tend to discourage individuals from seeking redress in the courts." *Budd v. Walker,* 60 Kan. App. 2d 189, 197

(2021). To guard against such claims, "the elements of malicious prosecution are to be strictly construed to keep the cause of action from being wielded from wrongdoers as a threat to ward of legitimate suits." *Id.* at 198.

Initially, the First Amended Complaint fails to assert each of the elements of a malicious prosecution claim. For example, there is no allegation that the Douglas County Defendants acted without probable cause. Intuitively, however, there must have been a finding of probable cause because Washington acknowledges that he was bound over for trial which ended in a mistrial.

Second, Washington makes no allegation that the Douglas County Defendants acted maliciously. At best, all he alleges is that he was unable to make bond and had multiple attorneys which contributed to the lengthy incarceration. The Defendants have no control over the setting of bond nor do they control the retention and appointment of counsel.

Third, he makes no allegation that the criminal proceedings terminated in his favor. Rather, he acknowledges that the dismissal was <u>without prejudice</u> which implies that he may still be prosecuted. The Kansas Court of Appeals similarly concluded that dismissal without prejudice does not foreclose future prosecution and that such dismissal is neither a conviction nor an acquittal. *State v. Waliallah,* 2018 WL 5091828 at *4 (October 19, 2018). Therefore, Washington's First Amended Complaint, with regard to his state tort claim of malicious prosecution, fails on its face.

Finally, Washington appears to incorporate in Count I an identical claim to the one alleged in Count II concerning a violation of his constitutional rights. The analysis for both is set forth below. Additionally, the analysis concerning the inability of the Board or the Sheriffs to impact his prosecution, bond, or incarceration are also discussed more fully below.

**3. In the alternative, Washington's malicious prosecution claim is barred by K.S.A. § 60-514.**

In the event the Court determines that the dismissal without prejudice was sufficient to state a claim for state tort malicious prosecution, Washington's claim is barred by the one-year statute of limitations found at K.S.A. § 60-514(b).

In general, a cause of action accrues, so as to start the running of statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is the point in time at which the plaintiff could first have filed and prosecuted the action to a successful conclusion. *Admire Bank and Trust v. City of Emporia,* 250 Kan. 688, 698 (1992). A malicious prosecution claim is covered by the one-year statute of limitations found at K.S.A. § 60-514(b). If the Court determines that the dismissal without prejudice, which occurred on **December 27, 2021** [Doc. 3, ¶ 15], triggered the cause of action, it is barred by the one-year statute of limitations which expired on **December 27, 2022**.[1]

Because Washington's Notice of Claim was not served on the Board Clerk until **July 27, 2022**, long after the statute of limitations had expired, it is ineffective. Thus, regardless of whether termination was or was not in favor of Washington, his malicious prosecution is barred.

**B.  Federal Claims.**

In his First Amended Complaint, Washington alleges that the Douglas County Defendants violated his rights under the Fourteenth Amendment in the form of malicious prosecution. [Doc. 3, ¶ 27].  Washington appears to advance two theories in support of his claim: (1) that the Defendants failed to fully and adequately investigate his case; and (2) that the Defendants failed to diligently and timely prosecute his case. For the reasons set forth below, this claim should be dismissed.

---

[1] The Kansas Supreme Court through Court Administrative Order #2021-PR.20 lifted the COVID-related tolling rules effective April 15, 2021, and, therefore, they have no impact on the calculation of the statute of limitations because Plaintiff's claim did not accrue until after the stay was lifted.

1.  **Washington fails to allege facts sufficient to state a plausible claim under the procedural due process clause of the Fourteenth Amendment.**

In Count II of his First Amended Complaint, Washington claims that his procedural due process rights protected by the Fourteenth Amendment to the United States Constitution were violated "...when he was kept in jail, in excess of five years, for a crime that he did not commit, and the charges against him were eventually dismissed." [Doc. 3, ¶ 25].[2] He asserts this is analogous to a claim for malicious prosecution.

Title 42 U.S.C. § 1983 states in part that "[e]very person who, under color of any statute...subjects...any citizen of the United States...to the deprivation of any rights, privileges or immunities secured by the Constitutional and laws, shall be liable to the party injured." *Brown v. Montoya,* 662 F. 3d 1152, 1163 (10th Cir. 2011).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." Here, although Washington does not identify the protected interest, it is assumed that he is making a liberty interest claim because of his lengthy confinement and his assertion of a procedural due process claim under the Fourteenth Amendment. "A liberty interest may arise from the constitution itself, by reason of guarantees implicit in the word 'liberty' or may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005)(citations omitted). It is well settled that due process protections extend to prisoners, though the extent of that protection is significantly less than that guaranteed to free persons. *Wolff v. McDonnell,* 418 U.S. 539, 555-56 (1974).

As noted above in Section 2(A), plaintiffs are obligated to frame the complaint with enough factual substance to support their entitlement to relief. Threadbare recitals of a cause of action, supported by mere conclusory statements fall short of the standard. *Iqbal,* 556 U.S. at

---

[2] To be clear, the charges were dismissed without prejudice. [Doc. 3, ¶15]

678.  Quite simply, Washington fails to allege any facts supporting his federal claims.  It cannot

even be said that the allegations are threadbare since there are none.

　　　　With regard to the Board, local governing bodies can be sued "for monetary, declaratory,

or injunctive relief where...the action that is alleged to be unconstitutional implements or

executes a policy statement, ordinance, regulation, or decision official adopted and promulgated

by that body's officers." *Monell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978). Here,

Washington only alleges that the Board had customs or policies but does not make the obligatory

factual link connecting these to a plausible violation of his constitutional rights under the

Fourteenth Amendment. Absent this allegation, the claims against the Board must be dismissed.[3]

　　　　In *Board of County Comm'rs of Bryan County, Okla.. v. Brown,* 520 U.S. 397, 403-404

(1987), the court held that a municipality may not be held liable under § 1983 solely because it

employs the tortfeasor and, instead, plaintiff must identify municipal 'policy' or 'custom' that

caused the plaintiff's injury. The court also required plaintiff to demonstrate that, through

deliberate conduct, the municipality was the "moving force" behind the alleged injury and there

be some causal link between the municipal action and deprivation of civil rights. *Id.*

　　　　It is not enough to state such a policy or custom existed, as that would just constitute a

"formulaic recitation" of the elements of the cause of action that is impermissible under *Ashcroft*

*v. Iqbal,* 556 U.S. 662 (2009). Rather, plaintiff must make some showing that the policy or

custom is "formally promulgated policy, well-settled custom or practice, final decision by a

municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of*

*Grand Junction Policy Dept.,* 717 F. 3d 760 (10th Cir. 2013).

　　　　Here, there is no allegation that the Board, through a policy or custom, was involved in

the arrest, prosecution, or imprisonment of Washington. That is because the Board legally could

---

[3] As noted above, the County is incorrectly named which forms an additional basis for dismissal

not. Unless the Board had some direct conduct or a policy or custom that was a causal effect, it cannot be held liable under § 1983.

Separately, under Kansas law the sheriff is an independently elected official of the county. See K.S.A. § 19-801a; *Blume v. Meneley,* 283 F. Supp. 2d 1171, 1174 ("the sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature. The sheriff is not a subordinate of the board of county commissioners...").   As to the Individual Defendants, Washington merely alleges that they occupied the elected position of Sheriff.  Like the Board, there is no allegation that any were involved in the arrest, prosecution or imprisonment of Washington.  Absent more, Washington's §1983 claims end at the starting line.

Also, as to the individual defendants, - "to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United State and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). In doing so, plaintiff must show how each defendant personally participated in the deprivation of his constitutional rights. He cannot rely on the supervisory status of a defendant. *Duffield v. Jackson,* 545 F. 3d 1234, 1239 (10th Cir. 2008) (supervisory status is not sufficient to create § 1983 liability). This is because an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the claim is based. *Kentucky v. Graham,* 473 U.S. 159, 165 - 66 (1985); *Henry v. Storey,* 658 F. 3d 1235, 1241 (10th Cir. 2011) ("but § 1983 imposes liability for a defendant's own actions – personal participation in the specific constitutional violation complained of is essential.") (citing *Foot v. Spiegel,* 118 F. 3d 1416, 1423-24 (10th Cir. 1997)).

As a result, a plaintiff is required to name each defendant not only in the caption of the complaint but again in the body of the complaint and to include in the body a description of the

acts taken of each defendant that violated plaintiff's constitutional rights. *McDonald v. Peterson,* 2002 WL 1692158 at *4 (D. Kan. November 14, 2022).

Where there are multiple defendants, plaintiff can only satisfy the requirements of Rule 9(b) by making specific, particular allegations against each defendant. As an example, in *Walker v. Mohiuddin,* 947 F. 3d 1244, 1249-51 (10th Cir. 2020), the court explained that plaintiff's allegations against a group of 16 "defendants" or "healthcare providers" were not sufficiently specific to show defendant violated plaintiff's clearly established right to medical care, where the complaint never explained each defendant's role in plaintiff's deficient medical care. Rather, a plaintiff must demonstrate "'Each defendant...caused a violation of plaintiff's clearly established constitutional rights, and that each defendant acted with the constitutional requisite state of mind.'" *Id.* Because Washington makes no allegation to as to the specific conduct of Armbrister, Roberts, and McGovern that violated his rights, the claims against these Defendants must be dismissed.

### 2.  The criminal proceeding did not result in a favorable termination.

To prevail on a claim for malicious prosecution, a plaintiff must ultimately prove, *inter alia*, that the proceedings against him were terminated in his favor. See *Sanchez v. Hartley,* 810 F. 3d 750, 754 n.1 (10th Cir. 2016).

Recently, the standard by which a favorable termination is measured has been called into question in *Thompson v. Clark*, ___ U.S.____, 142 S. Ct. 1332 (2022) where the court held that to demonstrate the favorable termination of a criminal prosecution for purposes of a Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction, and is not required to demonstrate that the prosecution ended with some affirmative indication of his innocence, such as an acquittal or a dismissal accompanied by a statement from the judge.

Here, Washington does not assert a Fourth Amendment action against the Douglas County Defendants. Rather, he's quite explicit and asserts a claim under the procedural due process section of the Fourteenth Amendment such that the prior standard in this circuit should apply.

To qualify as "favorable" the proceedings must terminate in a manner indicative of the plaintiff's innocence. See *Margheim v. Buljko,* 855 F. 3d 1077, 1086 (10th Cir. 2017). The mere fact that charges are dismissed is insufficient. See *Id.* Rather, the Court looks "to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence.'" *Id.* (quoting *Wilkins,* 528 F. 3d at 803). Whether the determination of a criminal proceedings was "favorable" is a question of law. *Id.* at 1088.

For example, Tenth Circuit precedent suggests a dismissal after evidence is suppressed on technical grounds, unrelated to the merits of the case, is not necessarily indicative of innocence. See *Id.* at 1086. Conversely, if "a court vacate[s] the conviction because the plaintiff was factually innocent," that resolution would suffice. See *Montoya v. Vigil,* 898 F. 3d 1056, 1066 (10th Cir. 2018) (citation and internal quotation marks omitted). Where a case terminates in a manner that is ambiguous as to the accused's innocence, there is no viable claim for malicious prosecution. See *M.G. v. Young,* 826 F. 3d 1259, 1262 (10th Cir. 2016) ("where the case is disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused."); *Montoya,* 898 F. 3d at 1066.

In sum, the relevant factors this Court should evaluate are: (1) the stated reason for the dismissal; and (2) the circumstances surrounding the dismissal. Here, as alleged in Washington's First Amended Complaint, the matter was dismissed without prejudice on December 27, 2021

having proceeded to trial in September 2019 only to not reach a verdict and a mistrial declared. [Doc. 3, ¶ 12 and 15].

None of this suggests a resolution of Washington's innocence. Rather, this suggests there is no viable claim for malicious prosecution which is supported by the court in *Fenn v. City of Truth or Consequence,* 983 F. 3d 1143, 1150 (10th Cir. 2020) (the court order does specify that the dismissal is "without prejudice" which "does not necessarily indicate innocence..."). After all, a designation of "without prejudice" does not preclude charges from being later re-filed.

### 3. In the alternative, Washington's claim is barred by the statute of limitations.

Section 1983 borrows its limitations principles from state law. 42 U.S.C. § 1988(a).  In doing so, the federal courts uniformly borrow the most analogous state statute of limitation.  The applicable period of limitations is derived from that which the State would apply if the action had been brought in state court. *Auto Workers v. Hoosier Corp.,* 383 U.S. 696 (1966).  As noted above, the correct statute of limitations for a malicious prosecution claim under Kansas law is one year thereby also barring Washington's § 1983 claim because it was not filed before **December 27, 2022**.

### 4. Washington's claims are barred by an available state tort claim

Washington may not bring a § 1983 claim alleging a Fourteenth Amendment procedural due process violations because Kansas tort law recognizes a claim for malicious prosecution and its availability bars any such action. *Parratt v. Taylor,* 451 U.S. 527 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327, 328 (1986). Here, because Washington only alleges a procedural due process claim under the Fourteenth Amendment it is barred because of this available relief. *Bledsoe v. Board of County Comm'rs of County of Jefferson, Kansas,* 501 F. Supp. 3d 1059 (D. Kan. 2020), reversed in part in *Bledsoe v. Carreno,* 53 F. 4th 589 (10th Cir. 2022).

**5. Washington's official capacity claims against McGovern and Roberts are redundant.**

The Supreme Court has recognized that "[t]here is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985). Because official-capacity suits are simply "another way of pleading an action against an entity of which an officer is an agent," the official capacity claims against McGovern and Roberts are redundant because Washington has also sued Armbrister in his official capacity as the Sheriff of Douglas County, Kansas. Because he is an elected official of the county separate and apart from the Board, the official capacity claims must be dismissed as redundant.

**6. The Individual Defendants are entitled to qualified immunity.**

Washington also asserts claims against the Individual Defendants in their individual capacities. "Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 163 (1985).

Qualified immunity protects public officials who are required to exercise their discretion, shielding them from personal liability for civil damages. *Apodaca v. Raemisch*, 864 F.3d 1071, 1075-76 (10th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). Qualified immunity is a judicially created doctrine that shields public officials based on having acted in good faith in the exercise of their duties. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009); *Gray v. Baker*, 399 F.3d 1241 (10th Cir. 2005).

Qualified immunity is immunity from suit, not just a defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). It is designed to protect governmental officials from costly and harassing litigation, and extends to "all but the plainly incompetent or those who knowingly violate the law." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). Because qualified immunity

is the "norm," public officials enjoy a presumption of immunity when qualified immunity is raised. *See Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010); *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013).

When a defendant asserts a qualified immunity defense, the plaintiff has a "heavy two-part burden" of establishing "(1) that the defendant's action violated a federal, constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (internal quotation marks omitted).   Failure to satisfy either prong of this test will result in a grant of qualified immunity to the defendant. *Id*.

Under the first prong, plaintiff must establish the defendants' conduct violated the law. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993).  If an officer's conduct does not violate a constitutional right, the inquiry ends and the officer is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

Under the second prong, plaintiff bears the burden to demonstrate the violated right at issue was "clearly established" at the time of the unlawful conduct.  *See Medina*, 252 F.3d at 1128.  Whether a right is "clearly established" is an objective test: "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). "For the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction."  *Pompeo v. Bd. of Regents of Univ. of New*

*Mexico*, 852 F.3d 973, 981 (10th Cir. 2017).  Courts are not to define a clearly established right "at a high level of generality."  *White v. Pauly*, 137 S.Ct. 548, 552 (2017).  Rather, "the clearly established law must be particularized to the facts of the case."  *Id.*  In other words, if the right is not clearly established, a court may find qualified immunity without deciding the constitutionality of the conduct.  *Apodaca*, 864 F.3d at 1076 (citing *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009)).

Qualified immunity defenses are typically resolved at the summary judgment stage. However, district courts may grant motions to dismiss on the basis of qualified immunity. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004); See also *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("at [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" (citations omitted).

Here, Washington's First Amended Complaint does not assert a viable constitutional claim against the Individual Defendants and the Court's qualified immunity analysis can therefore end at the first prong.  But, regardless, there is no case law that clearly establishes Defendants' conduct, whatever it might be, violated the Fourteenth Amendment.

## V.   <u>CONCLUSION</u>

Based on the foregoing argument and authorities, the Douglas County Defendants request that this Court dismiss Washington's action with prejudice, for their costs and attorney's fees pursuant to 42 U.S.C. § 1988 and for such other and further relief as the Court deems just and equitable.

Respectfully submitted:

FISHER, PATTERSON, SAYLER & SMITH, LLP

  /s/  Michael K. Seck
Michael K. Seck, #11393
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, Kansas  66210
(913) 339-6757/Fax: (913) 660-7919
mseck@fpsslaw.com
**ATTORNEY FOR DOUGLAS COUNTY**
**DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing pleading this 29th day of March 2023, with the Clerk of the Court by using the ECF system and served said pleading by *e-mail* to the following:

Larry G. Michel, #14067
Chris J. Kellogg, #21651
KENNEDY BERKLEY
119 West Iron Avenue, 7th Floor
P.O. Box 2567
Salina, KS 67402-2567
(785) 825-4674
(785) 825-5936 Fax
lmichel@kenberk.com
ckellogg@kenberk.com
**ATTORNEYS FOR PLAINTIFF**

  /s/ Michael K. Seck
Michael K. Seck, #11393